## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

SCOTT R.,

                Plaintiff,

      v.

KILOLO KIJAKAZI, *Acting
Commissioner of Social Security*,

             Defendant.

No. 1:21-cv-19519

**OPINION**

---

## APPEARANCES:

Taylor A. Vick
Robert A. Petruzzelli
JACOBS, SCHWALBE & PETRUZZELLI, PC
Woodcrest Pavilion
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08003

    *On behalf of Plaintiff.*

Philip R. Sellinger
UNITED STATES ATTORNEY
U.S. DEPARTMENT OF JUSTICE
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Corey S. Fazekas
SOCIAL SECURITY ADMINISTRATION
300 Spring Garden Street
Philadelphia, PA 19123

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

**INTRODUCTION**

This matter comes before the Court on an appeal by Plaintiff Scott R.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (Compl., ECF 1). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

**I.      BACKGROUND**

The Court recites herein only those facts necessary for its determination of this appeal.

**A. Administrative History**

On June 20, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefit ("DIB"). (AR 15). Plaintiff also filed a Title XVI application for supplemental security income ("SSI") on the same day. (AR 15). In both applications, Plaintiff alleged disability beginning June 18, 2019. (AR 15). These claims were denied initially on December 31, 2019, and upon reconsideration on May 14, 2020. (AR 15). Plaintiff appeared and testified at a hearing on January 7, 2021, held telephonically in light of the then-ongoing COVID-19 global pandemic. (AR 15). Plaintiff, represented by counsel testified at the hearing, as did a vocational expert ("VE"), Renee Jubrey. (AR 15). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated March 23, 2021. (AR 26). The Appeals Council denied Plaintiff's request for review on October 1, 2021. (AR 1). This Appeal followed. (Compl., ECF No. 1).

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

**B.  Plaintiff's Background and Testimony**

Plaintiff was born in 1984 and was thirty-six at the time of the hearing. (AR 34). He has no permanent residence but "couch-surf[s]" with friends or at his mother's house a couple of times per week. (AR 43–44). He is divorced with two children. (AR 44). He "recently started receiving food stamps" and receives "state Medicaid through New Jersey Family Care." (AR 45).

Plaintiff attended a local technical school for cooking instruction and later earned his GED while serving in the military. (AR 45). As a child, Plaintiff was in "resource classes" from kindergarten through twelfth grade due to a learning disability he developed after a battle with encephalitis, a form of epilepsy. (AR 46).

As to his military service, Plaintiff enlisted in the National Guard from December 2008 to June 2011. (AR 46). He re-enlisted as a reservist from 2016 to 2018 when he was honorably discharged. (AR 46–47). During his service, he trained to be a "light wheel vehicle mechanic." (AR 47). Plaintiff also explained that he completed significant physical and combat training. (AR 49–50).

In civilian life, Plaintiff previously worked as a line cook. (AR 45). Plaintiff also testified as to some seasonal employment as an actor and manager at a haunted house on the pier in Wildwood, New Jersey. (AR 51–55, 62). He also briefly worked as an overnight stocker at Walmart. (AR 55). Later, Plaintiff worked at a monster truck attraction on the boardwalk in Wildwood, serving at times as a mechanic, driver, safety checker, training supervisor, and assistant manager. (AR 57–60).

Plaintiff testified that he could no longer work due to debilitating lower back pain. (AR 64–65). He further explained that while experiencing this pain at work one day, he left early and went to the hospital and was later diagnosed with multiple bulging discs in his back. (AR 65). He

3

visited a pain specialist and was prescribed medications, Flexural and Mobic. (AR 65–66). He also received lumbar epidural injections. (AR 66). These medications and injections provided Plaintiff some but not complete relief. (AR 65–67).

Plaintiff also explained that he uses a cane to ambulate, as instructed by his primary care provider. (AR 67–68). He does not always use it in his mother's apartment, however, because the space is rather small, and he can maintain his balance by grabbing other objects. (AR 68). Although sciatica was ruled out as a cause of leg pain and mobility issues, his medical records document muscle atrophy in his left leg. (AR 68–69). Plaintiff explained that he believes this is due to poor circulation but admits that he does not have medical evidence to support that hypothesis. (AR 68–69). The issues with his leg complicate basic life activities, including showering and cooking, because he finds himself unable to stand for longer than ten minutes. (AR 69–70).

Plaintiff testified that he has struggled with post-traumatic stress disorder, depression, and anxiety since his father passed from lung cancer twelve to thirteen years ago. (AR 71). He explained that these conditions affect his ability to focus. (AR 72–73). Plaintiff recounted a recent incident in which he left home to pick up a prescription but had forgotten to put on pants. (AR 73). Similarly, he finds that he loses his train of thought in the middle of conversations. (AR 73).

### C.  VE Testimony

The VE testified regarding work that a hypothetical individual similarly situated to Plaintiff could perform. (AR 75). The VE testified that such an individual could perform work as an "assembler small products I" (DOT 706.684-022), "cashier II" (DOT 211.462-010), and "sales attendant" (DOT 299.677-010). (AR 85). The occupation "assembler small products I" is a light work position with an SVP level of 2 that has 300,000 jobs in the national economy. (AR 85). The occupation "cashier II" is a light work position with an SVP level of 2 that has 500,000 jobs in the

national economy. (AR 85). The occupation "sales attendant" is a light work position with an SVP level of 2 that has 280,000 jobs in the national economy. (AR 85). The VE confirmed each of these jobs could still be performed if the hypothetical individual were limited to "unskilled work, unskilled simple routine tasks." (AR 85). Finally, the VE explained that the hypothetical individual could not perform these jobs if, in addition to the other limitations, the individual were off-task twenty percent of an eight-hour workday or would have two to three unexcused absences per month. (AR 85–86). The VE confirmed that her testimony was consistent with the *Dictionary of Occupational Titles* ("DOT").

### D.  Medical History

The Court will briefly summarize the relevant medical evidence for purposes of this appeal. This recitation is not comprehensive.

#### 1.  Adult Function Report

In his Adult Function Report, dated July 17, 2019, Plaintiff described being able to manage his own personal care, to prepare his own meals, to clean and do laundry, to go out—such as to a store—alone, and to shop for himself. (AR 312–15). He explained that he is not able to manage his own finances because he lacks an income and "[n]ever learned how to use a checkbook." (AR 315). He enjoys some hobbies—including watching wrestling and football—and socializing, although he has not been able to go to social gatherings. (AR 316). He explains that his impairments affect his abilities in the following activities: lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing. (AR 316). He reported being unable to walk "more then ½ block without pain [sic]" and being unable to lift more than ten pounds. (AR 317). He explained that he is able to pay attention "all the time," can follow written instructions "fairly well," and can follow spoken instructions "very well." (AR 317). He gets along well with others, handles stress

5

very well, and is "great" with changes in routine. (AR 318). He reported using a cane daily but noted that the cane was not prescribed by a doctor, (AR 318)—despite testifying and suggesting to other care providers that his primary care physician told him to use it, (AR 67–68, 1126).

### 2. Mark Zappone, APN

Advanced Practice Nurse Mark Zappone ("APN Zappone") performed an "Initial Assessment and Diagnostic Impression" of Plaintiff in November 2019. (AR 981–91). He noted that Plaintiff presented normal or appropriate appearance, affect, orientation, mood, thought content and process, speech, motor skills, intellect, memory, concentration, attention, and behavior. (AR 986). He also reported that Plaintiff has partially impaired insight, impaired judgment, and impaired impulse control. (AR 986). He has no thought disorders. (AR 986). He diagnosed Plaintiff with post-traumatic stress disorder and mood disorder. (AR 988). He prescribed Zoloft and Seroquel. (AR 989).

APN Zappone also prepared a psychiatric report related to Plaintiff's application for benefits in May 2020. (AR 1115–24). APN Zappone noted that Plaintiff had no limitation with understanding or remembering, sustained concentration and persistence, social interaction, adaptation, or any other significant limitations. (AR 1120). He explained that Plaintiff's indication seemed fair. He noted that Plaintiff responded well to Zoloft to address "some depression" he presented. (AR 1118, 1121).

In January 2021, APN Zappone completed a "Mental Residual Functional Capacity Questionnaire" at the request of counsel. (AR 1128–32). In this report, APN Zappone noted that Plaintiff reported an "[a]bout 50% improvement" based on his Zoloft and Seroquel prescriptions. (AR 1128). APN Zappone noted that Plaintiff suffers from post-traumatic stress disorder, depression, herniated discs, sciatica, and epilepsy. (AR 1128). He opined that Plaintiff's prognosis

is "Fair to poor." (AR 1128). APN Zappone further reported that due to his impairments, Plaintiff would be unable to meet competitive standards with respect to the following "abilities and aptitudes": (i) maintaining attention for two-hour segments; (ii) maintaining regular attendance and being punctual within customary, usually strict tolerances; (iii) sustaining an ordinary routine without special supervision; (iv) working in coordination with or proximity to others without being unduly distracted; (v) making simple work-related decisions; (vi) completing a normal workday and workweek without interruptions from psychologically based symptoms; (vii) performing at a consistent pace without an unreasonable number and length of rest periods; (viii) responding appropriately to changes in a routine work setting; and (ix) dealing with normal work stress. (AR 1130). APN Zappone also suggested that Plaintiff could not meet competitive standards with respect to (i) understanding and remembering detailed instructions; (ii) carrying out detailed instructions; (iii) setting realistic goals or making plans independently of others; or (iv) dealing with stress of semiskilled and skilled work. (AR 1131). He also cannot (i) interact appropriately with the general public; (ii) maintain socially appropriate behavior; or (iii) adhere to basic standards of neatness and cleanliness. (AR 1131).

3. <u>Morris Antebi, M.D. & Advanced Practice Nurse Marilee Olson</u>

Plaintiff received treatment from Morris Antebi, M.D. and Advanced Practice Nurse Marilee Olson ("APN Olson") at Pain Specialists, P.A. in Northfield, New Jersey. After several visits, their notes consistently indicate that, "[Plaintiff] was told by his PCP to use a cane to ambulate per patient." (AR 1126, 1134–35, 1137–39, 1141, 1145). They did not prescribe the cane themselves, nor did Plaintiff present them documentation of a prescription.

4. <u>Tyressa Savage, D.C.</u>

Plaintiff received chiropractic care from Tyressa Savage, D.C. from as early as May 2019. (AR 908–80). Dr. Savage's treatment records note that Plaintiff walks with a cane, although she did not prescribe it. (AR 908–80).

**E. The ALJ's Decision**

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 26); *see* 20 C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 18, 2019, his alleged onset date. (AR 18). At Step Two, the ALJ determined that Plaintiff had several severe impairments, including lumbar degenerative disc disease/disc herniation, sciatica, and depression. (AR 18). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18). Specifically, the ALJ reviewed the severity of Plaintiff's mental impairments to determine if they met the criteria for Listing 12.04. (AR 18). The ALJ addressed whether Plaintiff could meet each Listing under either the Paragraph B or C criteria and found that Plaintiff had a "moderate" limitation in understanding, remembering or applying information but had no limitation in interacting with others, concentrating, persisting, maintaining pace, adapting or managing oneself. (AR 18–19). The ALJ also found that Plaintiff did not meet the Paragraph C criteria. (AR 20).

Considering the foregoing, the ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he may only occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, or climb ladders, ropes, and scaffolds; must avoid concentrated exposure to all hazards, including

unprotected heights and dangerous machinery; and may perform only unskilled, simple, routine tasks. (AR 20). Based on his RFC, the ALJ found at Step Four that Plaintiff was unable to perform any past relevant work. (AR 24).

At Step Five, based on the testimony of the VE, the ALJ found that Plaintiff could perform the requirements of representative unskilled, light occupations of Assembler, Small Products I, Cashier II, and Sales Attendant, and that a significant number of such jobs existed in the national economy. (AR 25).

## II.   **LEGAL STANDARD**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 442, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 772 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.

> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.

> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.

> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's [RFC] is the most [he] can do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" The examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016).

## III.   DISCUSSION

On appeal, Plaintiff asserts that: (a) the ALJ failed to properly assess his RFC; (b) the ALJ failed to properly evaluate the opinions of several healthcare providers; (c) the ALJ failed to properly consider his statements pursuant to SSR 16-3P and 20 C.F.R. § 404.1529; (d) the ALJ's decision at Step Five is not supported by sufficient evidence in the record; and (e) a constitutional defect in the Social Security Administration's structure requires remand.[2] For the following

---

[2]   Plaintiff further argues that the Court should grant him summary judgment as no further remand or rehearing is required. Because the Court finds that the ALJ's decision is supported by substantial evidence and therefore must be affirmed, Plaintiff's argument that he is entitled to summary judgment is rejected.

reasons, the Court finds that the ALJ's conclusions are supported by substantial evidence and affirms the final decision of the Acting Commissioner.

### A.  The ALJ Properly Assessed Plaintiff's RFC.

Plaintiff argues that the ALJ's assessment of his RFC was deficient in two ways. First, he contends that the ALJ erred by failing to consider all of his medically determinable impairments and limitations. Second, he argues that the ALJ erred by failing to consider whether his frequent need for medical treatment rendered him unable to work. The Court finds neither argument persuasive.

*First*, Plaintiff argues that the ALJ erred by failing to incorporate limitations in his RFC related to certain medically determinable mental and physical impairments: post-traumatic stress disorder ("PTSD"), mood disorder, muscle atrophy, and his use of a cane. (Pla. Br., ECF No. 11 at 14).[3] Plaintiff's argument is unavailing.

With respect to Plaintiff's PTSD, mood disorder, and muscle atrophy, the ALJ relied on substantial evidence in finding there was "no evidence these impairments imposed any durational limitation on [Plaintiff's] ability to perform work activity." (AR 18, 21). The ALJ found Plaintiff's PTSD, mood disorder, and muscle atrophy could "reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely consistent with medical evidence in the record." (AR 21). Specifically,

---

[3]  To the extent Plaintiff argues that the ALJ erred by failing to find these impairments severe at Step Two, that argument also fails. The Third Circuit has held that the Step Two inquiry is merely a *de minimis* screening device used to cast out meritless claims. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Moreover, "even if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." *Naomi Rodriguez v. Berryhill*, No. 18-00684, 2019 WL 2296582, at *10 (M.D. Pa. May 30, 2019) (citing cases). Having found that at least one of Plaintiff's impairments severe at Step Two, the ALJ allowed Plaintiff's claim to proceed in the sequential analysis and any error was harmless. (AR 18).

the ALJ noted the conservative course of treatment that Plaintiff pursued in treating these impairments, and further cited Plaintiff's self-reporting that "he is able to prepare quick meals, walk ½ block, uses public transportation, can lift and carry 10 pounds, and can do basic cleaning and laundry (Exhibit 4E), suggesting he is not a limited as alleged." (AR 22, 312–19). Moreover, the ALJ compared and reconciled conflicting records—as was his duty, *Richardson v. Perales*, 402 U.S. 389, 399 (1971)—with respect to Plaintiff's mental impairments. (AR 23). This careful and thorough analysis is more than sufficient under the substantial evidence standard to support the ALJ's findings. *E.g.*, *Holley v. Comm'r of Soc. Sec.*, 590 F. App'x 167, 168 (3d Cir. 2014). Plaintiff may disagree with the conclusion the ALJ drew, but the ALJ's decision belies his complaint that his impairments were not fully considered.

With respect to Plaintiff's use of a cane, Social Security Ruling ("SSR") 96-9p requires an ALJ to consider only "medically required" ambulatory-assistive devices. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 16-02807, 2017 WL 935442, at *7 (D.N.J. Mar. 9, 2017) ("[I]n addressing a claimant's RFC, the ALJ need only consider 'medically required' devices." (citation omitted)). Such devices are medically required when "there [is] medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996). Plaintiff supplied no such documentation. The record Plaintiff relies upon in arguing the ALJ erred merely recites his own assertions that he was told to use a cane to ambulate; they are not proof of an actual prescription. (AR 1126, 1134–35, 1137–39, 1141, 1145). In fact, Plaintiff's Adult Function Report details that he uses a cane but specifically states that it was not prescribed by a doctor. (AR 318). Lacking such documentation, the ALJ was not required

13

to consider his use of a cane in analyzing his RFC. Despite this, the ALJ, in fact, *did* consider Plaintiff's use of a cane, acknowledging his testimony on the subject and the chiropractic treatment notes of Dr. Savage that he used a cane for ambulation. (AR 21–22). Accordingly, the ALJ sufficiently considered Plaintiff's cane use even though he was not required to do so.

*Second*, Plaintiff asserts that the ALJ erred by failing to consider whether his frequent need for treatment rendered him unable work on a "regular and continuing basis." (Pla. Br., ECF 11 at 19–22). The Court again disagrees. Plaintiff primarily relies on the Third Circuit's opinion in *Kangas v. Bowen*, which held that an ALJ's failure to consider a plaintiff's need for regular and continuous treatment justified remand. 823 F.2d 775, 777 (3d Cir. 1987). However, in *Kangas*, the plaintiff's condition required eight hospitalizations—many of which entailed seven-to-ten days of in-patient treatment, followed by one-to-two-week at-home recovery periods—in the span of sixteen months. *Id.* at 776. Here, Plaintiff's course of treatment was not nearly as frequent, lengthy, or disruptive. Granted, Plaintiff cites over sixty doctor's appointments that he attended in a twenty-month period. (Pla. Br., ECF 11 at 21–22). Although averaging more than three doctor's appointments per month is undoubtedly significant, the inconvenience of these appointments pales in comparison to the lengthy hospitalizations and recovery periods experienced by the plaintiff in *Kangas*. Moreover, unlike *Kangas*, Plaintiff's doctor's appointments were scheduled and he was able to maintain a work schedule despite them. In sum, the ALJ did not err in declining to find Plaintiff disabled based on his frequent medical appointments.

### B.  The ALJ Properly Evaluated the Opinions of APN Zappone, Dr. Antebi, and Dr. Savage.

Plaintiff next argues that the ALJ failed to properly evaluate the medical opinions of APN Zappone, Dr. Antebi, and Dr. Savage. (Pla. Br., ECF No. 11 at 25–28). Upon review of the ALJ's decision, the Court finds no error in the ALJ's evaluation of these medical opinions.

14

First, Plaintiff argues that the ALJ improperly discarded the January 2021 opinion of Mark Zappone, APN. (Pla. Br., ECF No. 11 at 25). When faced with conflicting opinion evidence, an ALJ has significant discretion in choosing whom to credit. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." (citation omitted)). However, when presented with conflicting evidence, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer*, 186 F.3d at 429 ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."). The ALJ's factual findings, including the RFC, do not need to follow a particular format "so long as 'there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Tompkins v. Astrue*, No. 12-1897, 2013 WL 1966059, at *13 (D.N.J. May 10, 2013) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

Here, the ALJ carefully considered APN Zappone's 2020 and 2021 medical opinions, finding the former more persuasive. (AR 18–20). Explaining the comparative weight he applied to the respective opinions, the ALJ noted—

> I have given greater consideration to the May 2020 assessment of NP Zappone, because the claimant has very limited mental health treatment, and the degree of limitation reported by NP Zappone in the January 2021 assessment is not supported by the limited mental health treatment records, primary care provider treatment notes, or the record as a whole (Exhibit 11F).

(AR 20, 981–91). Despite the contradiction in APN Zappone's 2020 and 2021 medical opinions, the ALJ found the Plaintiff had a moderate limitation in understanding, remembering, or applying information, but further determined that Plaintiff had no limitation in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. (AR 19). Having

considered all the evidence and having given a reason for discounting the evidence he rejected, the ALJ did not err by rejecting APN Zappone's 2021 medical opinion. *Plummer*, 186 F.3d at 429.

Second, as to Dr. Antebi, the reason the ALJ did not consider his opinion is simple: he did not offer one. As the Commissioner rightly explains, a medical opinion is "'a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions' in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions." (Comm'r Br., ECF No. 12 at 9 (quoting 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2))). Dr. Antebi offered no such statement, and thus, the ALJ had no opinion to consider. All the same, the ALJ did consider the records of Plaintiff's treatment by Dr. Antebi, directly citing them in his analysis of Plaintiff's RFC. (AR 21–22). This was not error.

Finally, with respect to Dr. Savage, like Dr. Antebi, she offered no opinion as defined by the regulations, 20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2), and therefore, the ALJ did not err for failing to consider it. But even more fundamentally, Dr. Savage, a chiropractor, is not an acceptable medical source under the regulations—as Plaintiff acknowledges, (Pla. Reply, ECF No. 13 at 10)—so even if she had submitted an opinion, it would have been inappropriate for the ALJ to evaluate it under the medical opinion rules. 20 C.F.R. §§ 404.1502; 416.902 (listing acceptable medical sources).

Accordingly, the ALJ properly evaluated the opinions (or lack thereof) of APN Zappone, Dr. Antebi, and Dr. Savage.

### C.  The ALJ Properly Considered Plaintiff's Subjective Statements.

Plaintiff asserts that the ALJ failed to properly consider Plaintiff's subjective medical complaints regarding his condition in the formation of his RFC. (Pla. Br., ECF 11 at 36–39). The

Court does not find this persuasive because the ALJ properly considered and explained why Plaintiff's subjective complaints were not consistent with the objective medical evidence.

Although ALJs must consider claimants' subjective complaints, they are not obligated to credit them. *Rebecca L. v. Comm'r of Soc. Sec.*, No. 21-13848, 2022 WL 3025908, at *10 (D.N.J. July 31, 2022); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p ("We will not find an individual disabled based on alleged symptoms alone"). Claimants bear "the burden of producing medical evidence to support those complaints." *Arroyo v. Comm'r of Soc. Sec.*, 82 F. App'x 765, 768 (3d Cir. 2003). ALJs remain "free to 'discount' lay witness testimony but must explain the reasons for doing so." *Hendry v. Comm'r of Soc. Sec.*, No. 16-8851, 2018 WL 4616111, at *15 (D.N.J. Sept. 26, 2018) (collecting cases).

Here, the ALJ explained that the objective medical evidence supported a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms." (AR 21). However, the evidence could not support Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms." (AR 21). Specifically, the ALJ noted that some of Plaintiff's symptoms improved in response to medication, others only required conservative treatment, and ultimately, Plaintiff self-reported "that he is able to prepare quick meals, walk ½ block, use public transportation, and can do basic cleaning and laundry." (AR 22, 312–19). The ALJ therefore provided—as he was required—a specific explanation as to why he discounted Plaintiff's statements with respect to the intensity, persistence and limiting effects of his symptoms. *Hendry*, 2018 WL 4616111, at *15. In doing so, he did not err.

### D.  The ALJ's Findings at Step Five Are Supported by Substantial Evidence.

Plaintiff argues that the ALJ's findings at Step Five are deficient in two respects: (i) the ALJ failed to resolve several discrepancies between Plaintiff's RFC, the VE's testimony, and the

DOT; and (ii) the VE's testimony regarding the number of jobs in the national economy for one of the available jobs was unreliable and constitutes harmful error. Once again, the Court is not convinced remand is required.

1.  Resolving Discrepancies Between the VE's Testimony and the DOT

Plaintiff argues that the ALJ erred at Step Five by failing to identify and resolve discrepancies between Plaintiff's RFC, the VE's testimony, and the DOT's descriptions of the Assembler, Small Products I, Cashier II, and Sales Attendant jobs. (Pla. Br., ECF No. 11 at 32). Specifically, Plaintiff argues that the ALJ failed to resolve conflicts between those jobs' reasoning levels and Plaintiff's RFC limitations. (Pla. Br., ECF No. 11 at 32-33). The Court disagrees.

During a VE examination, "an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how the conflict was resolved.'" *Zirnsak v. Colvin*, 777 F.3d 607, 617 (3d Cir. 2014) (quoting *Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir. 2002)). The presence of inconsistencies is permissible if the ALJ's decision is otherwise supported by substantial evidence. *Rutherford v. Barnhart*, 399 F.3d 546, 558 (3d Cir. 2005); *Zirnsak*, 777 F.3d at 617.

Here, Plaintiff argues that there are unresolved discrepancies in the reasoning levels for the Assembler, Small Products I, Cashier II, and Sales Attendant jobs and Plaintiff's RFC, which limits him to unskilled, routine, repetitive tasks. The Court disagrees. As to the Assembler job, as the Commissioner rightly argues, (Comm'r Br., ECF No. 12 at 10), Plaintiff is wrong as a matter of law: "Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 214 (3d Cir. 2004). Because

Assembler, Small Products I, has a reasoning level of two, Plaintiff's argument fails.[4]

The analysis becomes more complicated with respect to the Cashier II and Sales Attendant jobs. Plaintiff cites the 2020 edition of the VE Handbook—a publication of the Social Security Administration—which provides a notably on-point example for situations such as this one:

> An ALJ's hypothetical may limit the claimant to "simple" or "repetitive" tasks, and you identify jobs with a GED reasoning level of 3 or higher. There is an apparent conflict between a job that requires reasoning level 3, and a hypothetical individual that can perform only "simple" or "repetitive" tasks. Be prepared to explain how the hypothetical individual could perform this job.

SOC. SEC. ADMIN., OFF. OF HR'GS OPS., OFF. OF THE CHIEF ALJ, VOCATIONAL EXPERT HANDBOOK 39 & n.50 (2020). First, as the Commissioner appropriately points out, (Comm'r Br., ECF No. 12 at 10–11), the VE Handbook is outside the certified record and is not binding source of law. *E.g.*, *Burnham v. Saul*, No. 19-01564, 2020 WL 3259619, at *7 (S.D. Tex. Apr. 14, 2020), *rep. & rec. adopted by* No. 19-01564, 2020 WL 3250978 (S.D. Tex. June 13, 2020). But given that the Social Security Administration itself seems to recognize that situations like this present a discrepancy that must be explained—and neither the VE nor the ALJ addressed the issue—Plaintiff makes at least a colorable argument. That said, courts appear to have come to different conclusions. *Graves v. Saul*, 18-00177, 2020 WL 896669, at *4 (N.D. Tex. Feb. 25, 2020) (acknowledging "conflicting case law"). In any event, this Court need not answer the question definitively, because even

---

[4] Plaintiff alleges another discrepancy with respect to the Assembler, Small Products I. He argues that his RFC limits him from concentrated exposure to hazardous conditions and equipment and suggests that the VE failed to take this into account while opining that he could perform the Assembler job. (Pla. Br., ECF No. 11 at 33). But Plaintiff is wrong on this point for two reasons. First, the VE *did* account for his inability to work around hazards based on the ALJ's first hypothetical. (AR 84–85). Second, and more fundamentally, the discrepancy that Plaintiff alleges is not between the VE's testimony and the DOT, but rather between the testimony and job figures Plaintiff found on the online resource O*Net. (Pla. Br., ECF No. 11 at 33). But nothing requires ALJ's to resolve such conflicts because the DOT—not O*Net—is the authoritative source in this area. *See Everingham v. Comm'r of Soc. Sec.*, No. 17-12249, 2018 WL 6322620, at *9 (D.N.J. Dec. 18, 2018) (rejecting a similar argument related to another third-party online resource). Accordingly, Plaintiff's argument fails.

assuming—without deciding—that this constitutes an error by the ALJ, it is certainly harmless; relying on the number of Assembler, Small Products I, jobs alone, *see infra* Section III.D.2, would support the ALJ's Step Five findings. *E.g.*, *Tamara H. v. Kijakazi*, No. 21-19353, 2022 WL 16570646, at *8–9 (D.N.J. Nov. 1, 2022) (explaining that reliance on a single position with 19,000 jobs in the national economy is sufficient to find a claimant not disabled). Plaintiff's argument therefore fails.

### 2.   Reliability of the VE's Testimony Regarding Job Numbers

Plaintiff asserts that the VE's testimony regarding the approximate number of jobs in the national economy for Assembler, Small Products I, as described in the DOT is unreliable and constitutes harmful error. (Pla. Br., ECF No. 11 at 33–34). Plaintiff argues that despite the VE's testimony that there were approximately 300,000 jobs for Assembler, Small Products I according to the DOT, there are only 19,710 such jobs in the national economy according to "Job Browser Pro DOT"—and this figure does not contemplate further erosion due to RFC limitations. (Pla. Br., ECF No. 11 at 33–34).

Although Plaintiff may quibble with its accuracy, Social Security Administration regulations continue to bind this Court, and those regulations continue to use the DOT as the benchmark for VE testimony. "[T]he Code of Federal Regulations specifically lists the DOT as a source of 'reliable job information[.]'" *Hearn v. Comm'r of Soc. Sec.*, No. 18-10538, 2019 WL 2710790, at *7 n.5 (D.N.J. June 27, 2019) (citing 20 C.F.R. § 404.1566(d)). "It is not for this Court to reform the methodology that SSA [vocational experts] use to determine available and appropriate jobs in the national economy that match a claimant's RFC." *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-05691, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017); *see also Junod v. Berryhill*, No. 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018) (finding that the "ALJ properly relied on the [vocational expert's] testimony to the extent that it was based upon DOT

data" rather than the O*NET).

Here, the VE and ALJ in turn reasonably relied on the DOT regarding the existence of jobs in the national economy. (AR 24). Given that "[a] vocational expert may rely on the DOT, and the ALJ may rely on the [vocational expert's] testimony to the extent it is consistent with the DOT," Plaintiff's argument fails. *Sanabria v. Comm'r of Soc. Sec.*, No. 15-08963, 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017) (quoting *Estevez v. Comm'r of Soc. Sec.*, No. 14-06337, 2016 WL 3381227, at *7 (D.N.J. June 8, 2016)).

### E. The Constitutional Defect in the Removal Provisions of the Social Security Act Does Not Require Remand.

Plaintiff asserts that the ALJ's decision is constitutionally defective because the Commissioner under whom the ALJ issued his final decision serves a longer term than the President and is removable only "for cause," thereby violating the separation of powers.[5] (Pla. Br., ECF No. 11 at 34–35). Plaintiff further argues the Appeals Council lacked a lawful delegation of authority to adjudicate his claim. (Pla. Br., ECF No. 11 at 35). Both parties agree, and it is generally well-settled, that the "for cause" removal provision violates the separation of powers by unconstitutionally restricting the President's ability to remove an executive officer. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("[T]he Constitution prohibits even 'modest restrictions' on the President's power to remove the head of an agency with a single top officer." (quoting *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2205 (2021))); *see also* Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 45 Op. O.L.C. __, 2021 WL 2981542 (2021). The parties dispute, however, whether the presence of the removal provision in 42 U.S.C. § 902(a)(3) caused Plaintiff harm requiring remand. The answer is no.

_____

[5] The Social Security Act provides that, "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3).

Plaintiff has not shown that the unconstitutional removal provision in 42 U.S.C. § 903(a)(3) inflicted harm requiring remand. *See Boger*, 2021 WL 5023141, at *3 (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner—and in turn his appointed ALJ's—are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); *Robinson v. Kijakazi*, No. 20-00358, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021) (same). Indeed, Plaintiff cannot show how the President's supposed inability to remove the Commissioner without cause might have affected any ALJ's disability benefits decision, much less the decision on his specific claim. The ALJ's decision was based upon an uncontested factual record and the application of established law, including case law, which generally cannot be changed by the Commissioner. Plaintiff does not—and, in all likelihood, could not—allege that President Biden sought to remove, but was prevented from removing, Commissioner Saul before Plaintiff's claim was decided. There is simply no plausible nexus between the adjudication of Plaintiff's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner.

Accordingly, because Plaintiff has not alleged any connection between the unconstitutional removal provision in § 902(a)(3) and the ALJ's decision denying Plaintiff benefits, the Court joins the myriad district courts across the country that have rejected such arguments out of hand. (Comm'r Br., ECF No. 12 at 15 n.5 (collecting cases)); *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021) ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the

decisions below on that ground."). Although the removal clause in § 902(a)(3) violates the separation of powers, it does not compel remand here.

IV.     **CONCLUSION**

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Commissioner. An appropriate Order accompanies this Opinion.

**CHRISTINE P. O'HEARN**
**United States District Judge**

23